(184 P.3d 972)
No. 97,380

STATE OF KANSAS, *Appellee*, v. CHRISTOPHER M. GORE, *Appellant*.

—

Opinion filed June 6, 2008.

*Korey A. Kaul* and *Sarah Morrison*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before HILL, P.J., GREEN and STANDRIDGE, JJ.

GREEN, J.: Christopher M. Gore appeals from a jury conviction of aggravated sodomy. On appeal, Gore contends that the trial court erred in denying his motion to dismiss the complaint or information on the ground that the 180-day speedy trial rule was violated. We agree. Accordingly, we reverse.

Christopher and Shannon Gore married in 1995 and have two daughters: H.G., born in 2000, and S.G., born in 2003. The Gores' divorce became final on April 26, 2004, after which Shannon and Christopher (hereafter Gore) shared joint legal custody and Gore regularly exercised his visitation rights.

In March 2005, the State charged Gore with alternative counts of aggravated sodomy and aggravated indecent liberties with a child against H.G. After several continuances, the case was set for a jury trial to begin June 5, 2006.

Three weeks before trial, Gore moved to dismiss the charges, alleging his statutory right to be brought to trial within 180 days of his May 26, 2005, arraignment had been violated because the State had received trial continuances totaling 207 days. At a hearing on

the motion, the State objected only to Gore's attribution to it of a 56-day continuance from November 14, 2005, to January 9, 2006. If this period is chargeable to the State, the State violated Gore's right to a speedy trial.

In support of his claim, Gore cited his counsel's file notes and a printout of the trial court's hearing docket downloaded from accesskansas.org, which he attached to his motion—both of which indicated the State requested that continuance. On the other hand, the trial court's "Full Court" computerized docketing system (Full Court) indicated that Gore requested the continuance. Because no record was made when Judge Gregory Waller granted the November 14 continuance, Judge Benjamin Burgess, to whom the case had been assigned, set an evidentiary hearing to resolve the factual dispute.

The State called four witnesses. First, Shirley Lowe, Judge Waller's administrative assistant, testified that she maintains his criminal jury trial docket. Based on handwritten notations on Judge Waller's official docket, which she entered on Full Court, Lowe stated that Gore had requested the November 14 continuance.

Second, the State called Amy Allred, a court clerk who fills in for Lowe when she is gone. On January 4, 2006, Allred changed an entry on Full Court to reflect that the State had requested the November 14 continuance. Although she did not recall making the change, she testified that she would not have made the change unless someone for the State had requested she do so.

Third, Rivina Souzik, a docket clerk in the district attorney's office testified that her office's November 14, 2005, docket notes indicated that Gore had requested the continuance.

Fourth, the State called Christine Ladner, the prosecuting attorney in Gore's case. Based on her notes and limited recollection, Ladner testified that Gore's counsel wanted the continuance after expressing an interest in negotiating a plea shortly before the November 14, 2005, trial date. Based on possible plea negotiations, Ladner knew the case would not go to trial on that date. Ladner also admitted that she had another trial scheduled for November 14, 2005, and recalled briefly meeting with Gore's counsel as she waited for that trial to begin, at which time they agreed on a new

trial date. Ladner, however, insisted that she understood Gore's counsel to be the one seeking the continuance to January 9, 2006, because she "would never have taken such a lengthy continuance over the holidays even on an out of custody defendant."

In support of his claim that the State had requested the continuance, one of Gore's cocounsel, Michael Cleary, testified about discussions he had with Ladner concerning continuances granted in Gore's case. Regarding the November 14, 2005, continuance, Cleary recalled that Ladner had called him on October 21, 2005, to notify him of her potential conflict with another trial she had scheduled for November 14, 2005. Ladner told him she would know by November 10, 2005, if the other trial would proceed and agreed to Cleary's proposal to meet with him and a detective to discuss a plea if the other trial did not commence. When Cleary did not hear from Ladner, he left messages for her on both November 10 and November 11, 2005, but she did not return his call. As a result, Cleary appeared in court on November 14, 2005, knowing the case would not be tried but was surprised to find that no one for the State was there when the case was called on the docket. After someone from the district attorney's office told Cleary that Ladner was in trial in another courtroom, he requested that the case be placed on the court's second docket call. He then went to the other courtroom, talked to Ladner, and they agreed on January 9, 2006, for the trial date. Cleary understood that the November 14, 2005, trial was being continued because of Ladner's conflict. Yet, it was not until he checked the Full Court web site that he learned the continuance had been attributed to Gore.

After hearing the testimony, the trial court wanted to postpone ruling on the issue until after the trial, but defense counsel insisted on a ruling on the potentially dispositive issue before trial. After a brief recess, the trial judge stated that the issue was "very close" and indicated, "On one entry it shows that 56-day period is allocated to the State and the other entry it shows that it's allocated to the defendant." The trial judge further stated:

"I've known Miss Ladner for a long period of time. I know that she's very conscientious.

"I have not known Mr. Cleary that same amount of time but I have no reason to question his forthrightness. I do know from my own knowledge and experience that the holiday time period is one in which there are no trials set and I know that while that is true that during the Thanksgiving week, during the week after Christmas before New Year's while there is no trials set, nevertheless the speedy trial time continues to run, and I know that Miss Ladner would be very conscientious about that allocation of speedy trial time."

As a result, the trial court determined that the 56-day continuance should be allocated to Gore and denied his motion to dismiss.

The jury found Gore guilty as charged. Gore moved for a new trial or acquittal and renewed his motion to dismiss for violation of his statutory right to a speedy trial. The trial court heard the motion before sentencing, noting that it had received and reviewed transcripts of the two hearings held on the speedy trial issue. After recounting the evidence presented at those hearings concerning the November 14, 2005, continuance, the court determined that "the crux" of the matter came down to the fact that Cleary never "unequivocally told Judge Waller this was to be the State's continuance," nor did Cleary's notes absolutely reflect that fact as they did with the January 9, 2006, continuance. Moreover, the court was not convinced that "there was a definitive request made on behalf of the State to seek that continuance." In again denying the motion, the trial judge further explained:

"Just my own knowledge of those docket calls, I know that there are district attorneys that appear at each of those docket calls, and it seems to me that the thing that probably would have happened had it actually been a State's continuance, is that Ladner would have informed the assistant district attorney who did appear, and they would have made the announcement.

"In any case, I just don't find that the evidence is convincing to establish the fact that it was not a defense continuance. Mr. Cleary is the one who appeared in Court. He's the one that made the request. There's no explicit statement that I see made that it was to be a State's continuance."

The court also denied Gore's motion for new trial. After dismissing the alternative aggravated indecent liberties with a child charge, the court denied Gore's motion for a departure and imposed a presumptive sentence of 117 months' imprisonment.

*Did the trial court err in denying Gore's motion to dismiss the complaint or information on the ground that the 180-day speedy trial rule was violated?*

Gore first challenges the denial of his motion to dismiss based on a violation of K.S.A. 22-3402(2), which provides, in pertinent part:

"If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within 180 days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, *unless the delay shall happen as a result of the application or fault of the defendant.*" (Emphasis added.)

Gore maintains that the trial court erred in concluding that the November 14, 2005, continuance was attributable to him. Moreover, he contends that it should have been attributed to the State and the case should have been dismissed because he was brought to trial more than 180 days after he was arraigned. On the other hand, to avoid the statutory mandate of the 180-day rule, the State seeks to excuse the 56-day delay under the proviso "unless the delay shall happen as a result of the application or fault of the defendant."

The parties dispute the standard of review. Relying on *State v. Garcia*, 282 Kan. 252, 260, 144 P.3d 684 (2006), Gore suggests that this court has unlimited review. The State, however, seeks a more deferential review for substantial competent evidence to support the trial court's finding that Gore had requested the 56-day continuance of his trial.

*Garcia* determined that it had unlimited review because the trial court's denial of defendant's statutory speedy trial question was based "on a strictly legal ground." 282 Kan. at 260. In so holding, the *Garcia* court also stated:

"Common sense suggests that when reviewing a trial court's denial of a motion to dismiss criminal charges, the applicable standard of review is determined by the ground on which dismissal was sought rather than a blanket standard for motions to dismiss." 282 Kan. at 259.

Furthermore, citing *State v. McGee*, 280 Kan. 890, 891-92, 126 P.3d 1110 (2006), our Supreme Court in *State v. Adams*, 283 Kan.

365, 368, 153 P.3d 512 (2007), stated: "Resolution of a statutory speedy trial issue is a question of law subject to de novo review." Moreover, when a dispute is not with the trial court's factual finding but with the conclusion of law drawn from those facts, appellate review of that question is unlimited. *Idbeis v. Wichita Surgical Specialists, P.A.,* 279 Kan. 755, 769, 112 P.3d 81 (2005). As a result, we determine that our standard of review is unlimited.

Our Supreme Court has recognized that the 180-day rule is plain and unambiguous and requires trial of a defendant no later than 180 days after arraignment for a defendant not in custody. *Adams,* 283 Kan. at 369. Moreover, in stating that the State bears the responsibility to protect defendants' right to a speedy trial and that defendants have no duty to bring themselves to trial, the *Adams* court declared:

"The State bears the responsibility for ensuring that the accused is provided with a speedy trial in accordance with K.S.A. 2006 Supp. 22-3402. The defendant is not required to take any affirmative action to ensure that his or her right to a speedy trial is observed. *State v. White,* 275 Kan. 580, 598, 67 P.3d 138 (2003). However, a defendant waives his or her statutory right to a speedy trial by requesting or acquiescing in the granting of a continuance. Defense counsel's actions are attributable to the defendant in calculating speedy trial violations. *State v. Bloom,* 273 Kan. 291, 310, 44 P.3d 305 (2002)." 283 Kan. at 369.

The State contends that Gore waived his right to a speedy trial by asking for the November 14, 2005, continuance. Nevertheless, this assertion is not supported by the record. Like *Adams,* neither the State nor Gore filed a written motion to continue the trial. Moreover, the record shows that the prosecutor had a pattern of double or triple booking jury trials to start on the same date. In fact, the State had booked two trials to start on November 14, 2005: Gore's trial and Leo Hollman's trial, which was commenced on that date. As the prosecutor conceded, she could not have tried both cases on November 14, 2005, when each case was scheduled to take several days to try.

The trial court went to great lengths to explain why the 56-day continuance should be attributed to Gore. For example, the trial court stated that Ladner, the prosecutor, was very conscientious about the allocation of speedy trial time. Moreover, the court stated

that it had known Ladner for a longer period of time than it had known defense counsel. In addition, the court stated that had the State requested the continuance, Ladner would have told the assistant district attorney who had been assigned to the November 14, 2005, docket call to announce the continuance. A conclusion based on these facts and a supposition is a non sequitur. Such a conclusion would render this court's review of a disputed speedy trial issue illusory and nonexistent. For example, if this court were to adopt the trial court's reasoning, it would mean that the speedy trial rule could never be violated where these previously mentioned facts and one supposition existed.

Moreover, the suppressed premise in the trial court's reasoning—that the State was less likely than the defendant to have caused the delay—is hardly certain. The suppressed premise, for example, is not supported by any authority, such as statistics or other appropriate sources. The trial court's conclusion that the 56-day continuance should be attributed to Gore was based on the following: (1) that the trial court had known Ladner for a longer period of time than it had known defense counsel; (2) that Ladner was very conscientious about the allocation of speedy trial time; (3) that Ladner would have told the assistant district attorney assigned to the November 14, 2005, docket call to announce the continuance had the State requested the continuance; and (4) that defense counsel appeared in court and requested the continuance. These four examples, however, do not necessarily support the trial court's conclusion. We will examine each of these examples.

First, the fact that the trial court had known Ladner for a longer period of time than it had known defense counsel is not very helpful. The record fails to show that the court used this information to make a credibility determination between Ladner and defense counsel's testimony. The record is absent of an explicit finding concerning Ladner and defense counsel's credibility. Moreover, the court stated that it had no reason to question defense counsel's forthrightness.

Second, the trial court's finding that Ladner was very conscientious about the allocation of speedy trial time is not helpful either. For example, Ladner testified that when she set two or more

trials to start on the same date, the case that would be given preference would be the one that was close to violating a speedy trial rule. Because the State did not try Gore on November 14, 2005, this would imply, at least based on Ladner's preference in trying cases, that Ladner did not believe Gore's case was close to a speedy trial violation. In fact, the record indicates that on November 14, 2005, the State would have been responsible for 88 days of the speedy trial period after Gore's arraignment. Consequently, on November 14, 2005, the State still had 92 days in which to bring Gore to trial within the 180-day speedy trial rule.

Third, what Ladner would have done had the State requested the continuance is a supposition—not a fact.

Fourth, the trial court's finding that defense counsel appeared in court and requested the continuance is also not determinative based on the record of the proceedings. For example, one record stated that the continuance should be attributed to Gore and another record stated that the continuance should be attributed to the State. Since the record of the proceedings is inconclusive as to whether Gore or the State caused the delay, the trial court's findings are inadequate to conclude that Gore had caused the delay. See *State v. Sanders*, 209 Kan. 231, 234, 495 P.2d 1023 (1972) (record which disclosed no order continuing defendant's trial until 103 days after defendant had been arraigned was controlling on issue of whether delay in bringing defendant to trial until more than 90 days after arraignment was due to defendant's fault despite defendant's statement before trial that his trial attorney had "put the trial aside and then postponed" the trial when he had been first assigned to defendant's case).

The State booked Gore's trial for aggravated criminal sodomy and aggravated indecent liberties with a child for November 14, 2005. Yet, the State chose instead to try another case. The obligation is upon the State and the court to commence the trial within the statutory period, unless a clear record is made showing that the delay in bringing a defendant to trial was caused by the fault of the defendant. The record, however, fails to show who was clearly responsible for Gore's rain check, *i.e.*, the continuance on November 14, 2005. Although one of Gore's defense attorneys accepted the

January 9, 2006, trial setting, his acceptance is neither an acquiescence to a continuance nor the equivalent of a waiver of Gore's statutory right to a speedy trial. See *Adams,* 283 Kan. 365, Syl. ¶ 3.

Our 180-day speedy trial rule operates like a statute of limitations. The State, not Gore, was responsible for ensuring that Gore was tried before the statutory speedy trial deadline expired. See *Adams,* 283 Kan. at 370. Gore had no duty to bring himself to trial. Because the burden was on the State to comply with the statutory speedy trial rule, and because the trial court's findings were inadequate to show that the 56-day delay was caused by the fault of Gore, we determine that the 56-day continuance should have been attributed to the State. Accordingly, we reverse Gore's conviction, vacate his sentence, and dismiss the charges against him.

Because we are reversing the conviction in this case, we need not address Gore's insufficiency argument.

Reversed.